[Cite as *State v. Kirk*, 2019-Ohio-4890.]

## COURT OF APPEALS OF OHIO

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

| | | |
|---|---|---|
| STATE OF OHIO, | : | |
| Plaintiff-Appellee, | : | |
| v. | : | No. 108136 |
| LACEY KIRK, | : | |
| Defendant-Appellant. | : | |

---

## JOURNAL ENTRY AND OPINION

**JUDGMENT:** AFFIRMED
**RELEASED AND JOURNALIZED:** November 27, 2019

---

Criminal Appeal from the Cuyahoga County Court of Common Pleas
Case No. CR-15-598476-A

---

### *Appearances:*

Michael C. O'Malley, Cuyahoga County Prosecuting Attorney, and Kerry A. Sowul, Assistant Prosecuting Attorney, *for appellee.*

Edward M. Heindel, *for appellant.*

SEAN C. GALLAGHER, P.J.:

{¶ 1} Lacey Kirk appeals his convictions for corruption of a minor, stemming from an incident occurring in 2000, and for rape and kidnapping, which took place in 2004. The trial court sentenced Kirk to an aggregate term of imprisonment of 27 years and 6 months, which included consecutive service of the

underlying sentences and the sentences imposed on two attendant firearm specifications.  For the following reasons, we affirm.

**2000 Incident**

{¶ 2}  The victim was 13 years old during the events leading to the corruption of a minor conviction.  According to the victim's stepfather, the victim looked like an average 13-year-old child at the time of the crime and, thus, appeared her age.  Kirk, then approximately 30 years old, picked up the victim across the street from a middle school, while the victim was on her way to have breakfast with a friend before school began.  Kirk took the victim to a hotel room where he proceeded to have sexual intercourse with her while he was in possession of a knife and a firearm.  The victim was in the hotel room for two days.  When she left the hotel room, the police were immediately notified and the DNA evidence implicating Kirk was preserved.  The jury acquitted Kirk of the rape and kidnapping charges stemming from the 2000 incident, but found Kirk guilty of corruption of a minor under R.C. 2907.04(A), which provides that no person, who is at least 18 years old, shall engage in sexual conduct with another person that is between 13 and 16 years old if the offender knows the victim's age, or is reckless in that regard.

**2004 Incident**

{¶ 3}  The second victim, then an 18-year-old university student, was walking to a store one day near her house to get medication for a migraine.  The victim was approached by Kirk and offered a ride to get breakfast.  The victim got into Kirk's car believing that Kirk was taking her to a restaurant, but he drove to a

nearby park instead of a restaurant. Kirk proceeded to rape the victim at gunpoint. After the rape, Kirk offered the victim money. The victim described that act as an attempted bribe. After the victim was released, she immediately reported the crime. The DNA evidence implicating Kirk was preserved. The jury found Kirk guilty of rape and kidnapping, including attendant firearm specifications.

**Evid.R. 404(B) Evidence**

{¶ 4} During the joint trial, the state also introduced evidence, over Kirk's objection, of a third rape for which Kirk was convicted in 2006. *See generally State v. Kirk*, 8th Dist. Cuyahoga No. 86895, 2006-Ohio-3691. In that case, Kirk picked up a 16-year-old victim on her way to school. The victim was induced into the car by one of her friends, who was dropped off along the way. Kirk drove the victim to her house for a change of clothes and claimed he would take her to the mall. Instead, Kirk drove the victim elsewhere and raped her in the back seat of the car at gunpoint. The victim fled when Kirk became distracted by a noise. Kirk was on parole from this conviction at the time he was arrested in connection with the 2000 and 2004 crimes, and was then serving a 120-day term of imprisonment for a parole violation, which would have expired sometime in December 2015.

{¶ 5} Before the trial commenced, Kirk filed a motion to dismiss based on preindictment delay. The trial court initially granted the motion with respect to the 2004 incident. The state filed its interlocutory appeal as a matter of right claiming the trial court applied the incorrect standard. *State v. Kirk*, 8th Dist. Cuyahoga No. 104866, 2016-Ohio-8296, ¶ 1. Kirk conceded the error, and the case was remanded

for the purposes of conducting a hearing under the appropriate standard of review. The renewed motion was ultimately denied.

{¶ 6} In the first assignment of error, Kirk claims the trial court erred in denying his renewed motion to dismiss. According to Kirk, with respect to the 2000 incident, "there was a lack of physical evidence and/or pictures that were no longer available" and with respect to the 2004 incident, "there was missing evidence that was connected with the case, including the *possibility* of phone records that otherwise could have generated, video-taped information that *could* have been drawn, that *could* have actually challenged or contradicted [the victim's] rendition of the story." (Emphasis added.) Kirk has not specifically identified any evidence that he is unable to obtain or which pictures would have aided the defense. His sole contention is that there could be evidence that is no longer available in light of the age of the case.

{¶ 7} Under the burden-shifting framework for analyzing a due-process claim based on preindictment delay, a defendant is required to present evidence of actual prejudice before the burden shifts to the state to produce evidence of a justifiable reason for the delay. *State v. Jones*, 148 Ohio St.3d 167, 2016-Ohio-5105, 69 N.E.3d 688 ¶ 13, citing *State v. Whiting*, 84 Ohio St.3d 215, 217, 1998-Ohio-575, 702 N.E.2d 1199. The determination of actual prejudice turns on a case-by-case review of the particular facts and circumstances. *Id.*, citing *State v. Walls*, 96 Ohio St.3d 437, 2002-Ohio-5059, 775 N.E.2d 829, ¶ 52, and *United States v. Marion*, 404 U.S. 307, 325, 92 S.Ct. 455, 30 L.Ed.2d 468. "Actual prejudice exists when missing

evidence or unavailable testimony, identified by the defendant and relevant to the defense, would minimize or eliminate the impact of the state's evidence and bolster the defense." *Id.*, citing *State v. Luck*, 15 Ohio St.3d 150, 157-158, 472 N.E.2d 1097 (1984).

{¶ 8} Kirk has not demonstrated prejudice. His claims of the possibility of lost evidence that could have aided his defense are vague and, at best, speculative. He has not presented any argument that identifies any evidence that was available before the prolonged delay caused its unavailability. In order to demonstrate actual prejudice, at the least the defendant must identify the missing evidence or unavailable testimony. He cannot rely on vague assertions of the possibility of being able to obtain evidence if the case was prosecuted in a timelier manner. *See Jones*. The limited arguments presented in this appeal cannot form the basis of a conclusion that the trial court erred in denying the motion to dismiss. App.R. 16(A)(7). The first assignment of error is overruled.

{¶ 9} In the second assignment of error, Kirk claims the trial court erred by denying a motion for separate trials of the 2000 and 2004 crimes. According to Kirk, the evidence of the two rape claims from 2000 and 2004 was not simple and direct.

{¶ 10} Crim.R. 8(A) provides that "two or more offenses may be charged in the same indictment" if the offenses "are of the same or similar character, or are based on the same act or transaction, or are based on two or more acts or transactions connected together or constituting parts of a common scheme or plan,

or are part of a course of criminal conduct." Joinder is generally permitted to "conserve judicial resources, reduce the chance of incongruous results in successive trials, and diminish inconvenience to the witnesses." *State v. Schaim*, 65 Ohio St.3d 51, 58, 1992-Ohio-31, 600 N.E.2d 661, citing *State v. Torres*, 66 Ohio St.2d 340, 343, 421 N.E.2d 1288 (1981). If offenses are properly joined under Crim.R. 8(A), the charges may be severed under Crim.R. 14 if the joinder will prejudice the moving party's rights. *Id.* In order to demonstrate prejudice, a defendant must affirmatively show that the evidence of the other crimes would not be admissible in the other trial if the counts were severed, and if the evidence would not be separately admitted, that the evidence of each crime is not simple and direct. *Schaim* at ¶ 42.

**{¶ 11}** Kirk's sole claim with respect to the joinder issue is that the "jury was presented with three separate rape allegations, including the 404(B) evidence [and the jury] could not be expected to rationally judge each case separately without making improper inferences about Kirk's character."

**{¶ 12}** The jury, to the contrary, acquitted Kirk of the rape and kidnapping charges stemming from the 2000 incident and solely convicted Kirk for corruption of a minor based on the undisputed evidence that Kirk, who was then approximately 30 years old, had sexual relations with a 13-year-old victim who appeared to be of that age. The actual results of the trial demonstrate that Kirk was not prejudiced by the joinder. The best outcome Kirk could have achieved with respect to the 2000 incident was a conviction for the corruption of a minor in light of the fact that the DNA evidence demonstrated that he had sexual intercourse with the victim, who

was described as an average looking 13-year-old child at the time of the crime. The jury's verdict demonstrates its capability of separating the evidence from the different events. The second assignment of error is overruled.

{¶ 13} This conclusion also resolves the fourth assignment of error, in which Kirk argues that the allegedly improper admission of his conviction for rape as admitted under Evid.R. 404(B) prejudiced Kirk's right to a fair trial because the jury could not be expected to separate all three events and acquit Kirk of any of the charges.

{¶ 14} In determining whether to grant a new trial as a result of the erroneous admission of evidence under Evid.R. 404(B), appellate courts consider both the impact of the offending evidence on the verdict and the strength of the remaining evidence after the tainted evidence is removed from the record. *State v. Tate*, 8th Dist. Cuyahoga No. 102474, 2015-Ohio-4496, ¶ 23. "[A]n improper evidentiary admission under Evid.R. 404(B) may be deemed harmless error on review when, after the tainted evidence is removed, the remaining evidence is overwhelming.'" *Id.*, quoting *State v. Morris*, 141 Ohio St.3d 399, 2014-Ohio-5052, 24 N.E.3d 1153, ¶ 32. In this case, not only was the jury demonstrably capable of limiting its use of the evidence, as demonstrated by the acquittal it returned on the rape and kidnapping charges stemming from the 2000 incident, but the evidence presented in favor of the 2004 crimes was overwhelming. *Id.*, quoting *Morris* at ¶ 33.

{¶ 15} In this case, there is no dispute that Kirk had sexual contact with the victim during the 2004 incident; the only question was one of consent based on Kirk's argument that the sexual intercourse was a sex-for-hire situation. On this point, the victim testified that she was raped at gunpoint after Kirk lured her into his vehicle under false pretenses. The victim discussed being offered money after the crime occurred, but framed that offer as a bribe on Kirk's part to buy her silence. Further, the victim reported the rape immediately upon being released and the DNA evidence implicating Kirk was preserved. Kirk did not offer any evidence to contradict the victim's trial testimony, nor did he establish any credible basis to discredit that testimony. Regardless of whether the evidence of the rape conviction was properly admitted under Evid.R. 404(B), the jury demonstrated its ability to segregate the evidence as it related to the other crimes, and the evidence in favor of the conviction based on the 2004 crime was overwhelming. As a result, even if we considered and recognized error with respect to the Evid.R. 404(B) issue for the sake of discussion, any such error would be harmless. The fourth assignment of error is overruled.

{¶ 16} In the third assignment of error, Kirk claims his statutory right to a speedy trial was violated because he was arrested on September 9, 2015, and trial commenced on October 15, 2018 — 1,132 days from arrest to trial.

{¶ 17} Under R.C. 2945.71(C)(2), the state must bring a defendant to trial on felony charges within 270 days of his arrest. *State v. Geraci*, 8th Dist. Cuyahoga Nos. 101946 and 101947, 2015-Ohio-2699, ¶ 19. Each day a defendant is held in jail

in lieu of bail counts as three days for purposes of calculating speedy trial time. *Id.* "The running of the speedy-trial clock may be temporarily stopped, that is, tolled, only for reasons listed in R.C. 2945.72. Upon review of a speedy-trial issue, a court is required to count the days of delay chargeable to either side and determine whether the case was tried within applicable time limits." *State v. Sanchez*, 110 Ohio St.3d 274, 2006-Ohio-4478, 853 N.E.2d 283, ¶ 8. Continuances at the defendant's request, and any reasonable period to allow the state an opportunity to respond and the court an opportunity to rule on any defense motion, toll the statutory time. *Id.* at ¶ 26-27.

{¶ 18} There are two important considerations that cannot be overlooked. The setting of a trial date at the defendant's request does not, in and of itself, toll the speedy-trial clock. *State v. Michailides*, 2018-Ohio-2399, 114 N.E.3d 382, ¶ 31-35 (8th Dist.). Further, there are no "hard-line" rules that dictate the resolution of speedy-trial calculations. Any announcement of so-called "hard-line" rules "merely serve as guideposts for a court's analysis." *State v. Martin*, 156 Ohio St.3d 503, 2019-Ohio-2010, 129 N.E.3d 437, ¶ 25. "When the facts and circumstances of the case show that the underlying source of the delay was attributable to the defendant," those delays must be so attributed. *Id.*, citing *State v. Bauer*, 61 Ohio St.2d 83, 84, 399 N.E.2d 555 (1980).

{¶ 19} In the initial briefing, neither party expounded on the discussion nor provided any indication whether Kirk was being held in conjunction with another matter during the pendency of the underlying case. Accordingly, and in the light of

the constitutional implications of the arguments advanced, this court sought supplemental briefing to permit the parties to clarify their respective positions in advance of the oral argument.

{¶ 20} In that briefing, Kirk claims to have been held in jail solely for the underlying case for the purpose of the "triple-count" provision of R.C. 2945.71(D), which provides that each day an offender is held in jail in lieu of bail on the pending charge counts as three days for the 270-day, statutory limit. In response, the state attempted to supplement the record with an unauthenticated correspondence from Kirk's parole officer, in which it is indicated that Kirk violated parole in May 2017 and an inactive hold was placed for the violation. The state's motion is denied. However, that fact was already in the appellate record and the state need not have resorted to attempting to supplement the record. In the hearing that was conducted on the record in October 2018, the trial court was notified of the parole holder that related back to the May 2017 parole violation. As a result, the triple-count provision does not apply to Kirk after May 2017. *State v. Burks*, 8th Dist. Cuyahoga No. 106639, 2018-Ohio-4777, ¶ 27, citing *State v. Glover*, 8th Dist. Cuyahoga No. 89059, 2007-Ohio-5727, ¶ 3, and *State v. Brown*, 64 Ohio St.3d 476, 479, 1992-Ohio-96, 597 N.E.2d 97.

{¶ 21} Out of the 1,132 calendar days that transpired between his arrest and trial, Kirk contends that only 431 days tolled during that time. At the other end of the spectrum, the state contends that all but 11 days tolled. Neither party is correct. Kirk ignored the continuances of the pretrials and trial dates that were at his request

and that are considered tolling events. *See generally Martin,* 156 Ohio St.3d 503, 2019-Ohio-2010, 129 N.E.3d 437. The state, on the other hand, improperly tolled the time periods from when a trial date was set at the defendant's request and failed to account for several time periods in which nothing in the record demonstrated a tolling event. *See generally Michailides,* 2018-Ohio-2399, 114 N.E.3d 382 (8th Dist.). "[B]ecause we are dealing with a fundamental right of the accused," we will briefly address the parties' respective positions with full recognition that the offender's "interest in a speedy trial is specifically affirmed in the Constitution." *Barker v. Wingo*, 407 U.S. 514, 537, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972). As such, we cannot superficially overrule or sustain based on the arguments provided. We must address the record as it exists.

{¶ 22} Kirk was arrested on September 9, 2015, and filed a motion for discovery on September 15 (6 days). Thereafter, based on several continuances at his request, time tolled through the state's interlocutory appeal that also tolled the statutory time. R.C. 2945.72(H) and (I). Following the expiration of the parties' appellate rights, nothing tolled the time between February 5, 2017, and Kirk's motion to continue the trial date filed on March 7, 2017 (90 days, triple counted). *Akron v. Downey*, 24 Ohio App.3d 225, 226, 495 N.E.2d 28 (9th Dist.1984) (speedy-trial time tolls during the period for which an appeal may be filed with the Ohio Supreme Court following an appellate decision). A pretrial was continued at the defendant's request until April 10, 2017, but that pretrial was not conducted until April 13, 2017. There is no indication in the record as to the reason for the pretrial

not occurring, and accordingly those days are attributed to the state (6 days, triple counted). *State v. Johnson*, 8th Dist. Cuyahoga No. 106532, 2019-Ohio-3178, ¶ 16. After that time, Kirk was not in custody solely on the underlying charges; he was also held on a parole-violation holder.

{¶ 23} Between July 10 and July 19, 2017, October 17 and October 25, 2017, and June 6 and June 11, 2018, the same thing occurred — a pretrial was set but not conducted until sometime later (22 days in total within those dates). *Id.* On July 24, 2017, the trial was set at defendant's request for August 14, 2017, which was the day that Kirk renewed his motion to dismiss (21 days). *Michailides.* Time was tolled until the trial court ruled on that motion on October 17, 2017. Another pretrial was continued at Kirk's request until November 2, 2017, and trial was set for December 5, 2017 (33 days). The trial date was converted into a pretrial, and time tolled for Kirk's continuance requests until January 22, 2018, when a new trial date was set. On February 23, Kirk filed a motion that we will assume at the very least tolled the time for 10 days for the state's response and a brief period for the trial court to render a decision. *Sanchez*, 110 Ohio St.3d 274, 2006-Ohio-4478, 853 N.E.2d 283, at ¶ 8. Nothing tolled the time otherwise until April 18, 2018, when Kirk sought to continue a pretrial conference (75 days in total). Following the series of continuances at the defendant's request, the speedy-trial time ran again between July 17, 2018, when a trial date was set, and July 23 when Kirk filed several motions in advance of the trial date that required the state's response and a reasonable period for the court's ruling (6 days). The August 21 trial date, at which time the July 23 motions ostensibly

could have been ruled upon, was continued at the defendant's request until October 15, tolling the remaining time.

{¶ 24} Accordingly, only 259 (6+90+6+22+21+33+75+6) of the 270 statutory speedy-trial days accumulated between September 2015 and October 2018 in light of the tolling events. Kirk's statutory rights were not violated, and the third assignment of error is overruled.

{¶ 25} In the fifth assignment of error, Kirk claims the trial court erred when it denied him the right to represent himself at trial. During a pretrial hearing conducted on the record, Kirk asked to discharge his court-appointed attorney and, in the alternative to seeking self-representation, asked for a continuance to allow himself time to retain counsel of his choosing. After a lengthy dialogue, the trial court permitted Kirk's then-assigned counsel to withdraw and the court appointed the public defender's office to represent Kirk. Kirk never renewed his motion to assert his right to self-representation.

{¶ 26} A defendant's "right to self-representation is rooted in the Sixth Amendment to the United States Constitution, which provides the following: '[i]n all criminal prosecutions, the accused shall * * * have the Assistance of Counsel for his defense.'" *State v. Obermiller*, 147 Ohio St.3d 175, 2016-Ohio-1594, 63 N.E.3d 93, ¶ 25. "The Ohio Constitution provides that '[i]n any trial, in any court, the party accused shall be allowed to appear and defend in person and with counsel.'" *Id.*, quoting Article I, Section 10, Ohio Constitution. A defendant "'may proceed to defend himself without counsel when he voluntarily and knowingly and intelligently

elects to do so.'" *Id.* at ¶ 28, quoting *State v. Gibson*, 45 Ohio St.2d 366, 345 N.E.2d 399 (1976), paragraph one of the syllabus. A trial court's denial of the right to self-representation is reversible error when the defendant properly invokes the constitutional right. *Id.*

{¶ 27} In order to be "proper," however, the defendant must "unequivocally and explicitly invoke" his right. *Id.* at ¶ 29. Courts must "indulge in every reasonable presumption against waiver" of the right to counsel. *Id.*, quoting *Brewer v. Williams*, 430 U.S. 387, 404, 97 S.Ct. 1232, 51 L.Ed.2d 424 (1977). And further, even if an unequivocal and explicit request for self-representation is made, a defendant may later abandon that request by acquiescing to counsel's legal representation. *Id.* at ¶ 31, citing *State v. Cassano*, 96 Ohio St.3d 94, 2002-Ohio-3751, 772 N.E.2d 81, ¶ 42, and *McKaskle v. Wiggins*, 465 U.S. 168, 182, 104 S.Ct. 944, 79 L.Ed.2d 122 (1984).

{¶ 28} In this case, Kirk's initial request was equivocal, and the trial court did not err by appointing another attorney in the attempt to provide Kirk with the constitutionally mandated representation. Although Kirk initially sought to discharge his court-appointed attorney and to proceed pro se, he did so based on his intent to retain counsel of his choosing. This is not an express invocation of the right to self-representation. Absent an express invocation, the constitutional right to self-representation is waived. *Id.* Further, even if Kirk's initial request was unequivocal, Kirk acquiesced to the representation provided by the public defender throughout the remainder of the trial proceedings. Nothing from this record indicates that Kirk

pursued an intention to represent himself beyond the abandoned request that came before his second appointed attorney was granted leave to withdraw and the public defender's office was appointed to represent Kirk. *See Cassano* at ¶ 42. Kirk, therefore, waived any right to self-representation in accepting the advice and assistance of the subsequent attorney appointed to represent him. *Id.* The fifth assignment of error is overruled.

{¶ 29} In the sixth and seventh assignments of error, Kirk claims that his convictions are against the weight of the evidence. Although Kirk framed the seventh assigned error in terms of sufficiency of the evidence, the sole argument advanced is expressly premised on the weight-of-the-evidence standard of review. As he claimed in the appellate briefing, "[f]or the reasons set forth in the previous assignment of error [(dealing with the weight of the evidence)] Kirk also claims that the convictions were not supported by sufficient evidence."

{¶ 30} A claim that a jury verdict is against the weight of the evidence involves a separate and distinct test that is much broader than the test for sufficiency. *State v. Drummond*, 111 Ohio St.3d 14, 2006-Ohio-5084, 854 N.E.2d 1038, ¶ 193. Kirk has not presented separate arguments in support of the claim that the conviction is based on insufficient evidence. As a result, we will solely address Kirk's arguments under the weight-of-the-evidence standard as presented. App.R. 16(A)(7); *Cassano*, 8th Dist. Cuyahoga No. 97228, 2012-Ohio-4047, at ¶ 2.

{¶ 31} When reviewing a claim challenging the manifest weight of the evidence, the court, reviewing the entire record, must weigh the evidence and all

reasonable inferences, consider the credibility of the witnesses, and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. *State v. Thompkins*, 78 Ohio St.3d 380, 387, 1997-Ohio-52, 678 N.E.2d 541. In undergoing this review, appellate courts must "ask whose evidence is more persuasive — the state's or the defendant's?" *Id.* This means that

> "The [reviewing] court * * * weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the [finder of fact] clearly lost its way and created such a manifest miscarriage of justice that the [judgment] must be reversed and a new trial ordered."

(Ellipsis and alterations sic.) *Eastley v. Volkman*, 132 Ohio St.3d 328, 2012-Ohio-2179, 972 N.E.2d 517, ¶ 20, quoting *Tewarson v. Simon*, 141 Ohio App.3d 103, 115, 750 N.E.2d 176 (9th Dist.2001). Appellate courts sit as the thirteenth juror with the ability to disagree with the factfinder's resolution of the conflicting testimony. *Thompkins* at 387, citing *Tibbs v. Florida*, 457 U.S. 31, 42, 102 S.Ct. 2211, 72 L.Ed.2d 652 (1982). The appellate court does not defer to the trier of fact. *See id.* Nevertheless, "[t]he discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction." *State v. Martin*, 20 Ohio App.3d 172, 175, 485 N.E.2d 717 (1983).

{¶ 32} Kirk was convicted of corruption of a minor pursuant to R.C. 2907.04(A), which provides that "[n]o person who is eighteen years of age or older shall engage in sexual conduct with another, who is not the spouse of the offender,

when the offender knows such other person is thirteen years of age or older but less than sixteen years of age, or the offender is reckless in that regard." He claims that the state failed to present credible evidence that he knew that the victim was 13 years old or older but less than 16 years old, or that he was reckless in that regard.

{¶ 33} At trial, the state presented evidence that the victim was an average looking 13-year-old child whom Kirk picked up across from a middle school as the victim was walking to school. Kirk argues that there is no evidence that the victim told Kirk her age, but this misses the point. The victim does not need to disclose her age in order to put the offender on notice of her tender years. From the evidence presented, the jury reasonably concluded that Kirk was at least reckless with respect to the victim's age in light of the fact that he picked her up near a middle school as the victim was walking to school and the undisputed evidence demonstrates that the victim appeared her age at the time of the crime. There is nothing inherently unreliable regarding the testimony demonstrating Kirk's knowledge of the victim's age.

{¶ 34} With respect to the rape and kidnapping convictions based on the 2004 incident, Kirk claims there was no evidence of force with respect to the rape and the state failed to establish kidnapping because the victim voluntarily entered the car. Neither argument has merit.

{¶ 35} The force element of rape was satisfied with the victim's credible testimony that Kirk threatened her with a brandished firearm. In addition, the fact that the victim voluntarily entered Kirk's car is irrelevant. In order to demonstrate

that a kidnapping occurred, the state must present evidence of force, threat, or deception. Kirk does not contest and has not presented any basis to undermine the victim's credibility with respect to her testimony establishing that she entered the car under the belief that Kirk would take her to a restaurant to get breakfast before Kirk drove the victim to the secluded area against the victim's wishes. This demonstrates kidnapping by deception. *See, e.g., State v. Frazier*, 8th Dist. Cuyahoga No. 107680, 2019-Ohio-2739, ¶ 20 (conviction for kidnapping by deception affirmed based on evidence that the victim voluntarily entered the car under the belief of being taken to the store). This is not the exceptional case warranting appellate intervention. The sixth and seventh assignment of errors are overruled.

{¶ 36} In the eighth assignment of error, Kirk claims that his rape and kidnapping convictions are imposed on allied offenses of similar import. Kirk did not preserve this error for appeal by lodging a timely objection, and therefore, he must demonstrate plain error. *State v. Rogers*, 143 Ohio St.3d 385, 2015-Ohio-2459, 38 N.E.3d 860, ¶ 22. This limits our appellate review. The plain error doctrine is not to be invoked except in the "utmost caution, under exceptional circumstances and *only* to prevent a manifest miscarriage of justice." (Emphasis sic.) *Id.* at ¶ 23.

{¶ 37} This is not that exceptional case. Kirk's sole argument is that the kidnapping relating to the 2004 incident did not occur until he brandished the firearm immediately before raping the victim, and therefore, according to Kirk, the two crimes were committed simultaneously. This ignores the "deception" aspect of

the kidnapping charge that is based on the credible fact that Kirk deceived the victim into getting into the vehicle with the false pretense of going to get breakfast together. *See, e.g., State v. Keeler*, 8th Dist. Cuyahoga No. 101748, 2015-Ohio-1831, ¶ 49-50. Instead of taking the victim to a restaurant, Kirk abducted the victim and took her to a secluded park in order to commit the rape. The kidnapping in this case goes well beyond Kirk's brandishing the firearm immediately before committing the crime. *Id.* Accordingly, Kirk has not demonstrated plain error and the eighth assignment of error is overruled.

{¶ 38} In the ninth assignment of error, Kirk claims the trial court erred by imposing maximum sentences on the underlying offenses to be consecutively served. The sole argument presented, however, is limited to the claim that both victims were physically unharmed by the attacks and that the attacks were not the worst forms of the offense.

{¶ 39} There are two aspects to Kirk's arguments. The first challenges the individual maximum sentences on each count. The second aspect deals with the trial court's decision to impose the individual sentences to be consecutively served under R.C. 2929.14(C)(4). Those arguments must be separately considered.

{¶ 40} The maximum sentences were imposed on each count, and therefore under R.C. 2953.08(A), we have jurisdiction to review the sentences in this case. In support of appellate review of his sentence, Kirk cites R.C. 2953.08(G)(2) and *State v. Marcum*, 146 Ohio St.3d 516, 2016-Ohio-1002, 59 N.E.3d 1231, ¶ 23. *Marcum* authorizes a felony sentencing review of sentences that is not expressly provided

under R.C. 2953.08(G). *Marcum* at ¶ 23. That statutory section sets forth the boundaries of appellate review over felony sentences and establishes a deferential standard of review of the findings necessary to impose certain sentences. As the Ohio Supreme Court noted, however, "some sentences do not require the findings that R.C. 2953.08(G) specifically addresses." *Id.* Nevertheless, according to *Marcum*, "it is fully consistent for appellate courts to review those sentences that are imposed solely after consideration of the factors in R.C. 2929.11 and 2929.12 under a standard that is equally deferential to the sentencing court." *Id. Marcum* provides the only avenue for appellate review of Kirk's sentence because the trial court is not required to make findings in favor of imposing the individual prison terms on each count, and thus under R.C. 2953.08(G)(2) as written, there is no basis to reverse a maximum sentence.[1]

---

[1] R.C. 2953.08 (G)(2) provides:

The court hearing an appeal under division (A), (B), or (C) of this section shall review the record, including the findings underlying the sentence or modification given by the sentencing court.

The appellate court may increase, reduce, or otherwise modify a sentence that is appealed under this section or may vacate the sentence and remand the matter to the sentencing court for resentencing. The appellate court's standard for review is not whether the sentencing court abused its discretion. The appellate court may take any action authorized by this division if it clearly and convincingly finds either of the following:

(a) That the record does not support the sentencing court's findings under division (B) or (D) of section 2929.13, division (B)(2)(e) or (C)(4) of section 2929.14, or division (I) of section 2929.20 of the Revised Code, whichever, if any, is relevant;

(b) That the sentence is otherwise contrary to law.

{¶ 41} "When sentencing a defendant, the court must consider the purpose and principles of felony sentencing set forth in R.C. 2929.11 and the serious and recidivism factors in R.C. 2929.12." *State v. White*, 8th Dist. Cuyahoga No. 106580, 2018-Ohio-3414, ¶ 7, citing *State v. Hodges*, 8th Dist. Cuyahoga No. 99511, 2013-Ohio-5025, ¶ 7. Consideration of the factors is presumed unless proven otherwise by the defendant. *Id.* at ¶ 9, citing *State v. Seith*, 8th Dist. Cuyahoga No. 104510, 2016-Ohio-8302, ¶ 12, and *State v. Keith*, 8th Dist. Cuyahoga Nos. 103413 and 103414, 2016-Ohio-5234. Thus, it is the trial court that possesses discretion to sentence offenders and appellate courts must defer to the trial court's sentencing decision. *State v. Roberts*, 2017-Ohio-9014, 101 N.E.3d 1067, ¶ 20 (8th Dist.), quoting *State v. Rahab*, 150 Ohio St.3d 152, 2017-Ohio-1401, 80 N.E.3d 431, ¶ 10; *State v. Hairston,* 118 Ohio St.3d 289, 2008-Ohio-2338, 888 N.E.2d 1073, ¶ 16; *Marcum*. As a result, and even under R.C. 2953.08(G) as interpreted through *Marcum*, we can reverse an individual felony sentence imposed solely after consideration of R.C. 2929.11 and 2929.12 only if we clearly and convincingly find that the record does not support the sentence. *Marcum* at ¶ 23.

{¶ 42} In this case, as it pertains to the individual sentences, the trial court considered all that was required by law. The sole argument advanced is that the crimes are not the "worst form of the offense" because the victims were left physically unharmed. The very fact that Kirk has not addressed the emotional impact of his conduct speaks volumes. Regardless, and in consideration of the limited arguments presented, Kirk has not demonstrated that the record does not

clearly and convincingly support the individual maximum sentences. The trial court considered the Crim.R. 11 and 12 factors and sentencing considerations that necessarily included Kirk's criminal history and the emotional impact on the victims. We cannot conclude that the record clearly and convincingly does not support the individual, maximum sentences.

{¶ 43} With respect to the consecutive service issue, Kirk has not demonstrated, let alone argued, that the R.C. 2929.14(C)(4) findings were not made or that the findings were not clearly and convincingly supported by the record. The only reference to "consecutive sentences" within the assigned error appears in the heading section. He has not set forth a separate argument in support of reversing the imposition of the consecutive sentences. Accordingly, there is no argument for consideration. App.R. 16(A)(7). The ninth assignment of error is overruled.[2]

{¶ 44} Kirk's convictions are affirmed.

It is ordered that appellee recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution. The defendant's convictions having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.

---

[2] In the tenth assignment of error, Kirk claims that his convictions should be reversed based on cumulative error. We have not found multiple errors, and therefore, we need not consider the final assignment of error.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27

of the Rules of Appellate Procedure.

_____

SEAN C. GALLAGHER, PRESIDING JUDGE

FRANK D. CELEBREZZE, JR., J., and
MICHELLE J. SHEEHAN, J., CONCUR