[Cite as *Guthrie v. Fickey*, 2023-Ohio-1071.]

STATE OF OHIO      )
                        )ss:
COUNTY OF SUMMIT    )

IN THE COURT OF APPEALS
NINTH JUDICIAL DISTRICT

DAVID GUTHRIE

    Appellee

    v.

ERIKA FICKEY

    Appellant

C.A. No.     30257

APPEAL FROM JUDGMENT
ENTERED IN THE
COURT OF COMMON PLEAS
COUNTY OF SUMMIT, OHIO
CASE No.    DR-2009-02-0466

DECISION AND JOURNAL ENTRY

Dated: March 31, 2023

---

CARR, Judge.

{¶1} Appellant Erika Fickey ("Mother") appeals from the judgment of the Summit County Court of Common Pleas, Domestic Relations Division. This Court dismisses the appeal.

I.

{¶2} Mother and Appellee David Guthrie ("Father") never married, but share a son ("son"), born in January 2009. Shortly after son's birth, Father initiated this action to establish paternity and parental rights and responsibilities. An agreed judgment entry was filed in May 2010. It included a shared parenting agreement pertaining to son and ordered Father to pay child support. Mother was named the residential parent for school purposes. The agreement was subsequently modified by agreed entries.

{¶3} In March 2018, Mother filed a motion seeking to terminate the shared parenting plan, or, in the alternative, to modify parenting time. Mother sought to be named the sole legal custodian and residential parent of son or that Father's parenting time be modified. Mother

subsequently filed an amended motion. Mother filed the initial motion over concerns of Father's drug abuse, including that Father was exercising parenting time while using drugs.

{¶4} In the summer of 2018, son became resistant to visiting with Father. Son also began seeing a counselor, Michelle Anderson. Around the same time period, the matter was referred to Social Services Evaluator Alissa Endicott.

{¶5} In August 2018, there was an incident while son was being transported to parenting time with Father. Son had to be physically put in the vehicle being driven by Father's parents. As the vehicle approached a stop sign, son unbuckled himself and jumped out of the vehicle. Son was located and returned to Mother's home.

{¶6} Following this event, Mother's counsel sent a letter to Father's counsel informing counsel that Mother would not be sending son for parenting time until it was recommended by a therapist to do so. On September 12, 2018, an agreed entry was filed in response to the August events. Therein, inter alia, the parties agreed: (1) that son would continue individual counseling with Ms. Anderson and would follow the therapeutic directions of the counselor; (2) that the parties and son would engage in family counseling with Sandra McMullin at We Care Counseling and follow all therapeutic direction of the family counselor; and (3) that the parties would use Our Family Wizard for non-emergency communication between the parties.

{¶7} The parties began family counseling in fall 2018; however, son was not a part of the sessions until January 2019. As part of the family counseling, Ms. McMullin also asked that son transition to an individual counselor at We Care Counseling. Son started to resume parenting time with Father in February 2019; however, overnight parenting time did not resume until mid to late 2019.

{¶8} In July 2019, Father filed a motion seeking to have Mother held in contempt for denying and interfering with Father's parenting time beginning in August 2018. Father included an affidavit which contained a chart of the various occasions Father maintained Mother denied him parenting time. Ultimately, Father and Mother both had motions before the trial court requesting the termination of the shared parenting plan or its modification. A guardian ad litem was appointed in early 2020.

{¶9} The matter itself was heard by a magistrate over seven separate hearing dates spanning from September 30, 2019 through October 28, 2020. An in camera interview with son was also conducted; however, that is not part of this Court's record.

{¶10} While through the course of the litigation son's relationship with Father improved to the point that son sought additional parenting time with Father, the parties nonetheless continued to experience difficulties communicating and agreeing on how to handle different matters. Difficulties included allocating parenting time over winter break 2019, providing information to the other parent, determining where and what extracurricular activities son would participate in, and determining whether son should undergo a neuropsychological evaluation in order to determine whether son's seizure medication was impacting his behavior.

{¶11} Both the guardian ad litem and Ms. Endicott recommended that the shared parenting plan be terminated and that Father be designated the legal custodian and residential parent. The guardian ad litem's recommendation was based primarily on two factors: which parent was more likely to facilitate court-approved parenting time rights, and whether one parent had continuously and willfully denied the other parent's rights to parenting time in accordance with an order of the court. *See* R.C. 3109.04(F)(1)(f), (i). The guardian ad litem testified that she believed Mother put "roadblocks" in the relationship with Father and son. Ms. Endicott based her

recommendations on what she perceived as controlling or manipulative tactics by Mother to not provide information to others and to consistently deny or interfere with Father's parenting time and his relationship with son.

{¶12} In February 2021, the magistrate issued a decision. The magistrate terminated the shared parenting plan and named Father the legal custodian and residential parent of son. Mother was awarded parenting time in accordance with the trial court's parenting time schedule. In so doing, the magistrate referenced the factors in R.C. 3109.04(F)(1) and determined, inter alia, that Father was more likely to honor and facilitate court-approved parenting time rights and that Mother continuously and willfully denied Father's parenting time in violation of orders of the trial court. In addition, the magistrate found Mother in contempt for "continuously and willfully denying [Father] his court-ordered parenting time." Mother was sentenced to 15 days in jail and a $250 fine. The sentence was suspended on various conditions, including, inter alia, that Mother pay Father's attorney fees to prosecute the contempt action, which were then undetermined. The trial court adopted the magistrate's decision that same day.

{¶13} Mother filed objections to the magistrate's decision and had the transcripts of the hearings filed in the trial court. Mother then filed a supplemental brief in support of her objections. Father opposed Mother's objections.

{¶14} In February 2022, the trial court issued an entry overruling Mother's objections. In ruling on the objections, the trial court noted that "Mother's defenses [to the contempt charge] are interwoven with the parenting issues present in this case, and therefore, the Magistrate addressed the credibility and believability of these defenses while also analyzing the factors relating to whether the shared parenting plan should be terminated." The trial court agreed with the

magistrate's findings that "Mother was continuously and willfully denying Father his court-ordered parenting time in violation of th[e trial court's] order."

{¶15} Mother has appealed, raising five assignments of error for our review. However, this Court previously, in a journal entry, determined that it was without jurisdiction to consider Mother's arguments pertaining to the contempt ruling as the issue of attorney fees remained pending. *See Guthrie v. Fickey*, 9th Dist. No. 30257 (June 15, 2022). Therefore, it dismissed that portion of the appeal. *See id.*

### ASSIGNMENT OF ERROR I

THE TRIAL COURT ERRED IN FINDING MOTHER IN CONTEMPT FOR DENIAL OF PARENTING TIME PURSUANT TO THE PARTIES' SHARED PARENTING PLAN.

### ASSIGNMENT OF ERROR II

THE TRIAL COURT ERRED IN FINDING MOTHER IN CONTEMPT FOR DENIAL OF PARENTING TIME WHEN AN AGREED JUDGMENT ENTRY INDICATED THAT THE PARTIES WOULD FOLLOW THE THERAPEUTIC DIRECTIVES OF THE COUNSELORS AND MOTHER FOLLOWED THEIR ADVICE IN NOT FORCING THE CHILD TO GO WITH FATHER.

### ASSIGNMENT OF ERROR III

THE TRIAL COURT ERRED IN FINDING MOTHER IN CONTEMPT FOR DENIAL OF PARENTING TIME WHEN NOT MOTHER, BUT THE 10-YEAR-OLD CHILD, REFUSED TO EXERCISE PARENTING TIME WITH FATHER.

{¶16} Mother's first three assignments of error relate to the trial court's contempt ruling. As this Court has already concluded that it lacked jurisdiction over that portion of the entry and dismissed that portion of the appeal, these matters are not properly before this Court at this time and will not be addressed. *See id.*

### ASSIGNMENT OF ERROR IV

THE TRIAL COURT ERRED IN PLACING THE CHILD IN THE CUSTODY OF FATHER.

**ASSIGNMENT OF ERROR V**

THE TRIAL COURT ABUSED ITS DISCRETION BY OVERRULING
MOTHER'S OBJECTIONS WITHOUT UNDERTAKING AN INDEPENDENT
REVIEW.

{¶17}  Mother argues in her fourth assignment of error that the trial court erred in naming Father the legal custodian and residential parent of son.  Mother argues in her fifth assignment of error that the trial court erred in failing to undertake an independent review as to the objected matters.  This Court concludes that these matters are also not properly before us given their undeniable connection to the contempt proceedings.

{¶18}  There is no dispute that the standard in determining whether contempt is appropriate is substantively different than the standard utilized in allocating parental rights and responsibilities.  *See Bohannon v. Bohannon*, 9th Dist. Summit No. 29320, 2020-Ohio-1255, ¶ 14-15 (discussing contempt) and *In re B.T-H.*, 9th Dist. Wayne No. 21AP0036, 2022-Ohio-4139, ¶ 11-12 (discussing the process of allocating parental rights and responsibilities).  Accordingly, under many circumstances, review of the allocation of parental rights and responsibilities on appeal would be possible even when a portion of the appeal related to contempt was dismissed.

{¶19}  However, here, much of the matter centered on whether Mother had continuously and willfully denied Father his court-ordered parenting time.  Father argued Mother should be held in contempt for denying and interfering with Father's parenting time and the magistrate and trial court found that Mother had continuously and willfully denied Father court-ordered parenting time.  Nevertheless, the facts related to Father's contempt motion, i.e. whether Mother continuously and willfully denied Father parenting time, also played an important role in the ultimate decision to name Father the legal custodian and residential parent.  While it is true that "[w]hether the residential parent or one of the parents subject to a shared parenting decree has

continuously and willfully denied the other parent's right to parenting time in accordance with an order of the court[]" is but one factor of many the trial court is required to consider in determining the best interest of the child, this factor also formed part of the basis of both the guardian ad litem's and Ms. Endicott's recommendations to the trial court. R.C. 3109.04(F)(1)(i). Moreover, it was certainly a factor that the magistrate and trial court also considered to be important. As noted above, even the trial court, in ruling on the objections, noted how the contempt and parenting matters were "interwoven."

{¶20} Thus, were this Court to proceed to analyze the merits of Mother's fourth and fifth assignments of error, it would undoubtedly touch upon areas directly related to the contempt proceedings. Doing so could lead this Court to inadvertently make determinations here that would prevent a subsequent full and independent review of Mother's arguments related to contempt given that this Court would be constrained by this decision. Therefore, this Court concludes that Mother's fourth and fifth assignments of error are not properly before us. We accordingly dismiss this appeal. *See State v. Owsley*, 3d Dist. Auglaize No. 2-21-13, 2021-Ohio-4561, ¶ 6-7 (dismissing the appeal when the appellant's arguments were not ripe for review).

III.

{¶21} Mother's assignments of error are not properly before this Court.

Appeal dismissed.

———

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period

for review shall begin to run.  App.R. 22(C).  The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellant.

DONNA J. CARR
FOR THE COURT

HENSAL, P. J.
SUTTON, J.
CONCUR.

APPEARANCES:

CORINNE HOOVER SIX, and RACHEL L. SMICK, Attorneys at Law, for Appellant.

MARY RANDAZZO, Attorney at Law, for Appellee.